**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **TYRONE P. CROUCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:06-0040** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 12.) and Defendant's Motion for Judgment on the Pleadings (Doc. No. 14.). Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Tyrone P. Crouch (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on February 13, 2004 (protective filing date), alleging disability as of January 1, 1985, due to breathing problems, heart problems, high blood pressure, neck pain, shoulder pain, sight problems, fainting/dizzy spells, depression, anxiety, nerves, and panic disorder. (Tr. at 13, 40, 51-53, 102, 132, 141, 416.) The claim was denied initially and upon reconsideration.[1] (Tr. at 32-34, 40-42, 425-27, 431-33.) On February 16, 2005, Claimant requested a hearing before an

---

[1] Claimant filed prior applications for SSI benefits on June 8, 1988, and May 8, 2002. (Tr. at 12, 406-09.) The claims were denied initially on July 27, 1999, and October 1, 2002, respectively, and were not further pursued by Claimant. (Tr. at 410-15.)

Administrative Law Judge (ALJ). (Tr. at 43.) The hearing was held on August 31, 2005, before the Honorable Arthur L. Conover. (Tr. at 434-59.) By decision dated October 25, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-23.) The ALJ's decision became the final decision of the Commissioner on December 1, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On January 17, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

>which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>    (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>    (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14.) Under the second inquiry, the ALJ found that Claimant suffered from cervical strain, lumbar strain, major depressive disorder, anxiety disorder, and chronic obstructive pulmonary disease, which were severe impairments. (Tr. at 16, 21 Finding 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, 22 Finding 4.) The ALJ then found that Claimant had a residual functional capacity for work at the medium level of exertion, with the following limitations:

> [C]laimant retains the residual functional capacity to lift or carry 50 pounds occasionally and 25 pounds frequently. He can occasionally climb and crawl. The claimant must avoid concentrated exposure to vibration, harsh environmental

5

>   irritants, and hazards of heights and dangerous machinery. The claimant is limited to simple work. He must avoid large crowds in the workplace.

(Tr. at 20, 22 Finding 6.) At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 20, 22 Finding 7.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a hand packer, an assembler, and a material handler, at the medium level of exertion, and as a file clerk, mail room clerk, and gate guard, at the light level of exertion. (Tr. at 21, 22 Finding 11.) On this basis, benefits were denied. (Tr. at 21-23.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

>   evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on February 24, 1961, and was 44 years old at the time of the administrative hearing. (Tr. at 13, 20, 51.) Claimant had an eighth grade education and a Generalized Equivalency Diploma. (Tr. at 13, 20, 108, 442.) In the past, he worked as a stocker for a grocery store. (Tr. at 112, 443.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) erred in assessing Claimant's pain and credibility, (2) failed to consider the combination of Claimant's impairments, and (3) failed to consider Claimant's Global Area of Functioning ("GAF"). (Pl.'s Br. at 11-16.) The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 7-11.)

Analysis.

1. ALJ's Pain and Credibility Assessment.

Claimant first argues that the ALJ improperly evaluated his subjective complaints of pain and erred in finding Claimant not entirely credible. (Pl.'s Br. at 13-14.) Specifically, Claimant challenges the ALJ's reliance upon the lack of medical treatment and prescription medication when the Claimant could not afford the same. (Id. at 14.) Claimant asserts that at the time, he had no income or medical insurance, and therefore, it was error for the ALJ to discount his subjective complaints because he did not have much of a treatment history. (Id.) The Commissioner argues that

7

the "amount of treatment was not the ALJ's sole reasoning for finding [Claimant's] subjective complaints not credible" and that the ALJ's analysis was in accordance with the applicable law and Regulations. (Def.'s Br. at 8-10.)

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b) (2004); SSR 96-7p; see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (2004). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (I) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.

>>(iii) Precipitating and aggravating factors;
>
>>(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
>>(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
>>(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
>>(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply

because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 16-17.) The ALJ found that Claimant's treatment history from his alleged onset date of January 1, 1985, through his last insured date of December 31, 1988, was sparse. (Tr. at 18.) The ALJ further found that with regard to the period of time after his last insured date, "the objective findings of record continue to indicate that the claimant is not as limited as alleged." (Id.) The failure to seek medical treatment is inconsistent with complaints of disabling pain. See SSR 96-7p, 1996 WL 374186, *7. However, the claimant's inability to pay may justify the failure to seek medical care. Social Security Ruling 96-7p states as follows:

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p, 1996 WL 374186, *7. The medical record in this case contains references to Claimant's inability to pay for medical treatment and prescription medications and his attempts to obtain a medical card. (Tr. at 183, 185, 232, 275.) The transcript of the administrative hearing reveals that

the ALJ did not ask Claimant why he did not seek medical treatment or take prescription medications. Accordingly, the Court finds that the ALJ's reliance on the lack or absence of medical treatment and medications in discounting the credibility of Claimant's pain and symptoms was error.

Notwithstanding this error, it is clear that the ALJ discounted Claimant's subjective symptoms and complaints of pain based on more than his lack of treatment. In considering the factors contained in 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4), the ALJ noted Claimant's daily activities to include making coffee, sitting on his front porch, watching television, and reading. (Tr. at 17.) The ALJ then identified Claimant's current medications and noted that he takes hot baths to relieve the pain. (Id.) With regard to Claimant's neck and back pain and allegations that he could lift a maximum of ten pounds, the ALJ found that despite an alleged onset date of January 1, 1985, Claimant reported to Dr. Gobunsuy on August 26, 2002, that he had experienced the pain only since a motor vehicle accident in 1991. (Tr. at 17, 189, 267.) Furthermore, radiology reports dated May 28, 1988, revealed only some increase in distance between the odontoid process and the right lateral mass of C1. (Tr. at 17, 391.) Otherwise, the exams of his skull, cervicodorsal spine, shoulders, right elbow, and both knees at that time, were unremarkable. (Id.) The ALJ found that as of July 2004, Claimant had normal ranges of motion of his cervical and lumbar spine. (Tr. at 18.) Earlier in his decision, the ALJ noted that on consultative exam, Claimant was able to walk on his heels and toes and could heel-to-toe walk and squat without difficulty. (Tr. at 15, 268-69.) Additionally, radiology reports of August 26, 2002, revealed only moderate degenerative changes of his cervical spine and only mild degenerative changes with disc space narrowing at the L5-S1 level of his lumbar spine. (Tr. at 15, 194.)

Concerning Claimant's COPD, the ALJ found that on consultative examination in August, 2002, Claimant denied coughing, wheezing, or orthopnea, and that his lungs were clear. (Tr. at 18,

190.) Dr. Gobunsuy noted that Claimant's chest x-ray of August 26, 2002, was normal. (Tr. at 18, 190, 194.) The ALJ noted that in July 2004, Claimant reported a history of having smoked two packs of cigarettes a day and that he had stopped smoking a few days ago. (Tr. at 18.) However, as of July 20, 2005, Claimant had again started smoking and was advised to stop. (Tr. at 18, 401.) The ALJ also noted earlier in his decision that Claimant underwent pulmonary function testing on July 14, 2004, which revealed only mild COPD. (Tr. at 14-15, 274.)

With regard to Claimant's nervous and anxiety conditions, the ALJ, giving the Claimant the benefit of the doubt, found that Claimant had only moderate limitations in social functioning and maintaining concentration, persistence, or pace. (Tr. at 19.) The ALJ further found that Claimant was limited to simple work and must avoid large crowds in the workplace. (Tr. at 20.)

Based on the foregoing, it is clear that the ALJ did not discount Claimant's subjective complaints and symptoms solely due to the amount of treatment and medication. Rather, the ALJ found Claimant not entirely credible based on the aforementioned inconsistencies and objective findings of record. (Tr. at 17-18.) However, at the administrative hearing, Claimant alleged that his medications caused him to experience headaches, drowsiness, and grogginess. (Tr. at 446, 452.) He specifically stated that when he took his "heart medication" and "nerve pills," he had to take a nap during the day. (Tr. at 452.) The ALJ noted in his decision that Claimant took the following prescription medications: "Nitroquick, Sular, Cozaar, Hydrochloro Phazide, Alprazolam, and Potassium and uses a Nebulizer." (Tr. at 17.) Nevertheless, he did not discuss what, if any, side effects Claimant was experiencing which might have impacted his residual functional capacity and did not assess the credibility of Claimant's testimony in these regards. It is evident from the record that Claimant was prescribed medications which might have produced adverse side effects and reported it at the administrative hearing. It was the ALJ's responsibility to sort through the evidence

and make findings in these respects. It is not the Court's responsibility to do so. The Court therefore finds that the ALJ's analysis is deficient, and this matter must be remanded for further consideration of the evidence of the side effects of medications which Claimant is prescribed, the credibility of his statements about them, and what, if any, bearing they have upon Claimant's residual functional capacity.

2. ALJ's Consideration of Impairments in Combination.

Claimant next argues that the ALJ did not properly consider the combined effects of his impairments. (Pl.'s Br. at 14-15.) The Commissioner asserts that the ALJ separately discussed Claimant's "impairments, subjective complaints of pain, and his daily levels of activities," and therefore, "properly considered the impairments in combination." (Def.'s Br. at 10.) Specifically, the Commissioner asserts that Claimant "alleged to be disabled due to a nervous condition, breathing problems, high blood pressure, and neck pain. . . . [and that t]he ALJ reviewed all of the evidence of record and discussed each of [Claimant's] alleged impairments." (Id.)

The Social Security Regulations provide as follows:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2004). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments

13

have on claimant's ability to work must be analyzed. <u>DeLoatche v. Heckler</u>, 715 F.2d 148, 150 (4th Cir. 1983.)

The Claimant fails to point to any specific portion of the record or any specific evidence demonstrating that the ALJ failed to consider the severity of his impairments in combination and "fractionalized" the impairments. (Pl.'s Br. at 14-15.) The ALJ specifically noted the requirements of the Regulations with regard to considering impairments in combination. (Tr. at 14, 16.) The ALJ then discussed Claimant's impairments, finding that his cervical and lumbar strain, major depressive disorder, anxiety disorder, and COPD, were severe impairments. (Tr. at 16.) The ALJ specifically found, however, that the record did not reflect that Claimant's impairments were "'severe' enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. at 16.) Further, the ALJ considered and accounted for Claimant's various impairments in determining Claimant's residual functional capacity, limiting him to medium work, occasionally climbing and crawling, avoiding exposure to harsh environmental irritants and hazards of heights and dangerous machinery, requiring only simple work, and avoiding large crowds in the workplace. (Tr. at 20.) Additionally, the ALJ noted that he had considered all of the evidence of record in making his decision. (Tr. at 21.)

Notwithstanding the foregoing, the Court finds that the ALJ failed to consider singly, or in combination, Claimant's alleged vision problems and fainting/dizzy spells. In his "Disability Report - Appeal," submitted at the administrative reconsideration level, dated September 2, 2004 (Tr. at 132-38, 141.), Claimant identified the following new physical or mental limitations as a result of his illness, injuries, or conditions since his last disability report: "fainting/dizzy spells, breathing problems, heart problems, blood pressure, neck & shoulder pain, problems seeing." (Tr. at 132, 141.) The administrative decision denying his request for reconsideration acknowledged these alleged

disabling impairments. (Tr. at 40.) The ALJ however, failed to mention, let alone discuss and evaluate, Claimant's alleged vision problems and fainting/dizzy spells. Accordingly, the Court therefore finds that the ALJ's analysis is deficient, that he did not consider and evaluate the combined effect of all Claimant's impairments, and that this matter must be remanded for further consideration of Claimant's alleged impairments regarding his vision and fainting/dizzy spells.

3. <u>ALJ's Consideration of Claimant's GAF</u>.

Finally, Claimant argues that the ALJ failed to consider Claimant's GAF of 50-55. (Pl.'s Br. at 15-16.) The Commissioner asserts that the ALJ specifically reviewed and discussed Claimant's GAF scores in his decision. (Def.'s Br. at 11.)

The Court agrees with the Commissioner and finds that the ALJ adequately considered Claimant's GAF scores. In determining whether Claimant's alleged mental impairments were severe, the ALJ noted that Claimant underwent a psychiatric evaluation by Nadeem Ahmed, M.D., on January 20, 2003. (Tr. at 15, 225-28.) Dr. Ahmed diagnosed Claimant as suffering from major depression, moderate, recurrent and a panic disorder without agoraphobia. (Tr. at 15, 227.) He opined that Claimant had a GAF of 50. (<u>Id.</u>) The GAF Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 41-50 indicates that the person has "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> ("DSM-IV") 32 (4th ed. 1994).

The ALJ further noted that Claimant underwent another psychiatric evaluation on August 22, 2003, by M. Khalid Hasan, M.D. (Tr. at 15, 232-35.) Dr. Hasan diagnosed acute and chronic alcoholism, episodic, worse under stress and a history of panic and anxiety disorder, worsening. (Tr. at 15, 233-34.) Dr. Hasan opined that Claimant had a GAF of 55. (Tr. at 15, 234.) A GAF of 55 indicates only moderate difficulty with social, occupational, or school functioning. American

15

Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994). The GAF scores alone however, do not render a claimant disabled. See Dawson v. Barnhart, 2006 WL 982005 (W.D. Va. Apr. 11, 2006) ("[C]ourts have held that the GAF scale is intended to be used to make treatment decisions, and nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score. A GAF score may assist in the ALJ's determination of a claimant's residual functional capacity, but is not essential to such a determination.") (citations omitted).

      The ALJ determined that Claimant's major depressive and anxiety disorders were severe impairments. (Tr. at 16.) In reaching this decision, the ALJ acknowledged the other mental evidence of record, including a consultative psychological evaluations performed by Sunny S. Bell, M.A., on August 19, 2002 (Tr. at 15, 183-87.), and by Lisa C. Tate, M.A., on July 16, 2004. (Tr. at 15, 275-82.) Ms. Bell diagnosed depressive disorder, not otherwise specified, with anxious features and alcohol abuse, sustained full remission. (Tr. at 15, 186.) She opined that Claimant interacted socially within normal limits, noting that he was uncomfortable around crowds of people. (Tr. at 15, 186.) She also opined that Claimant's concentration was mildly deficient based on committing one error in performing serial threes. (Id.) Ms. Tate diagnosed depressive disorder, not otherwise specified; panic disorder without agoraphobia; anxiety disorder, not otherwise specified; alcohol abuse, sustained full remission; and cannabis abuse, sustained full remission. (Tr. at 15, 278-79.) As did Ms. Bell, Ms. Tate opined that Claimant's concentration was only mildly deficient based on his performance on the Digit Span subtest of the WAIS-III. (Tr. at 15-16, 280.) However, she further opined that Claimant's social functioning was mildly to moderately deficient. (Tr. at 16, 280.) She noted that Claimant was appropriate and related fairly well, was cooperative, responsive, and maintained fair eye contact but exhibited a dysphoric mood with restricted affect, had apparent

difficulty sitting still, and had mildly deficient attention. (Tr. at 280.) Giving Claimant the benefit of the doubt, the ALJ concluded that Claimant had mild restrictions of activities of daily living, moderate difficulties maintaining social functioning, concentration, persistence, or pace, and had no episodes of decompensation since his alleged onset date. (Tr. at 16, 19.) In assessing Claimant's RFC,[3] the ALJ limited Claimant to performing simple work that does not involve large crowds. (Tr. at 20.)

Based on the foregoing, the Court finds that the ALJ acknowledged and evaluated Claimant's GAF scores and the increase in the scores from 50 to 55 and finds that the substantial medical evidence, as discussed above, supports the ALJ's assessment that Claimant was only mildly limited in his activities of daily living and was moderately limited in his social functioning, concentration, persistence, or pace. The Court thus finds that the ALJ's assessment of Claimant's mental

---

[3] "RFC represents the most that an individual can do despite his or her limitations or restrictions." *See* Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." *Id.* "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

*Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

17

impairments and RFC is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Doc. No. 12.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 14.) is **DENIED**, the final decision of the Commissioner is **VACATED**, and this matter is **REMANDED** to the Commissioner for further proceedings consistent herewith under the fourth sentence of 42 U.S.C. § 405(g) and **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 22, 2007.

R. Clarke VanDervort
United States Magistrate Judge